**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
IN RE: EX PARTE APPLICATION OF NIKE
SHIPHOLDING CORPORATION
PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT
DISCOVERY FOR USE IN A FOREIGN PROCEEDING
-----------------------------------------------------------------X

1:23-MC-00221 (ALC) (KHP)

**EX PARTE ORDER**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Nike Shipholding Corporation ("Petitioner"), which is a corporation governed by the laws of the Republic of the Marshall Islands, has filed an ex parte application for judicial assistance pursuant to 28 U.S.C. § 1782 to obtain documentary evidence for use in a foreign proceeding. (Ex Parte Appl., ECF No. 1.) Specifically, Petitioner seeks authorization to issue subpoenas to Credit Suisse Holdings (USA), Inc.; Credit Suisse (USA), Inc.; Credit Suisse Securities (USA) LLC; and Credit Suisse Asset Management, LLC (the "Subpoenaed Entities"), seeking certain documents concerning investments made by Petitioner on the advice of Credit Swiss AG ("CSAG") that caused Petitioner substantial losses.

## BACKGROUND

The background of this matter is as follows. Petitioner interacted with CSAG through Easternmed Asset Management Services Ltd. ("Easternmed"), which acted as Petitioner's representative. Petitioner, through Easternmed, was encouraged by its advisor within CSAG's Private Client Division to invest in credit-linked notes referencing Wirecard AG ("Wirecard"), a German payment-processing company, to be issued by CSAG's special purpose vehicle, Argentum Capital SA ("Argentum"). Before the first note was issued, the Financial Times published an article questioning Wirecard's accounting practices. When Petitioner questioned

its advisor at CSAG about the risks of the invesment, its advisor discussed positive ratings of Wirecard by major ratings agencies and downplayed the risks.  Petitioner made the investments, and the notes were issued on October 15, 2019 and March 10, 2020.   Thereafter, on June 25, 2020, Wirecard filed for insolvency, causing Petitioner to lose over $13 million.

Petitioner learned that prior to its investment, CSAG had served as a joint bookrunner in relation to a bond issued by Wirecard in early 2019 and had advised Softbank in relation to its purchase of Wirecard convertible bonds.  Petitioner believes that because of these prior roles, CSAG should have known of the risks associated with Wirecard but did not disclose them or its prior involvement with Wirecard to Petitioner before Petitioner made its first investment.  CSAG then reassured Petitioner that Wirecard had elevated cash reserves to induce it to make the second investment.  Petitioner contends that CSAG had a conflict of interest and advised Petitioner to invest to cover CSAG's own credit risks associated with Wirecard.  Accordingly, Petitioner contemplates bringing a claim against CSAG before the Commercial Court in Zurich, Switzerland for violation of conflict-of-interest rules, breach of fiduciary duty, and "breach of mandate."[1]

Although Petitioner did not interact with any of the Subpoenaed Entities, Petitioner believes the Subpoenaed Entities, which are direct or indirect subsidiaries of CSAG and all based in New York City, have information concerning CSAG's analysis of Wirecard's financial position in the period January 2019 through March 2020 and risks in investing in Wirecard; the compensation CSAG earned as a result of its role as adviser to SoftBank in connection with its purchase of convertible bonds issued by Wirecard in April 2019 and the earnings formula; the

---

[1] In Switzerland, a breach of mandate is akin to a breach of contract claim.

compensation CSAG earned as a joint bookrunner to a bond issued by Wirecard in September 2019 and the earnings formula; CSAG's credit exposure to Wirecard between January 2019 and March 2020; documents and communications concerning the creation, evaluation, approval, marketing and sale of the notes issued in October 2019 and March 2020; documents and communications concerning Petitioner's investment in the notes; and any documents and communications relating to the reporting by the Financial Times and other media about alleged accounting irregularities at Wirecard between October 2019 and March 2020 and CSAG's responses to customers' queries regarding same.  Petitioner bases its belief that the Subpoenaed entities have documents because CSAG markets itself as having an "integrated" business model and "unified, global Wealth Management division [and] a global Investment Bank."

     Petitioner submitted a Declaration from its counsel, Thomas Weibel, a member of the Basel Bar and Swiss Bar Associations and partner in Vischer, a Swiss law firm.  (Weibel Decl., ECF No. 2.)  Weibel explains the basis for the anticipated lawsuit against CSAG – an alleged breach of its duties under the Swiss Code of Obligations in the Zurich Commercial Court, which has jurisdiction to adjudicate investment disputes between Petitioner and CSAG.  In accordance with Swiss law, Petitioner has already informed CSAG of its intention to bring the claims.  The letter, dated April 28, 2023, requests that CSAG give an account of its activities per the mandate agreement between the parties and to provide documents relevant to the claims.  The documents sought directly from CSAG are documents created for the purposes of CSAG and/or Argentum obtaining internal product approvals in respect of credit-linked notes referencing Wirecard and evidencing grant of approval, documents reflecting details of the notes

referencing Wirecard and information prepared for marketing the investments, research and analyst reports by CSAG and its affiliates concerning Wirecard, and due diligence reports relating to Wirecard.  The letter reserves Petitioner's right to commence a claim without further notice.

Weibel attests that under Swiss law, the formal boundaries of individual group companies are less important in the banking sector compared to other industries, which leads him to the conclusion that CSAG's affiliates are more likely to possess information concerning CSAG offerings than with affiliates in other industries.  He also points out that general inquiries relating to CSAG's public disclosures and investor relations may be directed to its offices in New York and that CSAG files periodic reports with the Securities and Exchange Commission as a foreign private issuer trading American Depositary Shares on the New York Stock Exchange.

## DISCUSSION

Section 1782 empowers a United States district court to order any person residing within its jurisdiction to provide discovery for use in a foreign proceeding pursuant to the application of an interested party.  28 U.S.C. § 1782(a).  Applicants for discovery under Section 1782 must meet three statutory requirements: "(1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be 'for use in a foreign proceeding before a foreign tribunal', and (3) the applicant must be either a foreign tribunal or an 'interested person.'"  *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017) (citing *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015)).

The application confirms that the Subpoenaed Entities all reside in the Southern District of New York.  Further, Petitioner intends to use the proposed discovery in a foreign proceeding to be filed in the Swiss Commercial Court.  Finally, Petitioner is an interested person because it will be a party to the proceeding.  Therefore, Petitioner meets the statutory criteria of Section 1782.

Provided the statutory requirements for discovery are met, the Court must then determine, in its discretion, whether the discovery should be permitted in light of the four so-called *Intel* factors.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  These factors are as follows:

- Whether the person from whom discovery is sought is a participant in the foreign proceeding;
- The nature and character of the foreign tribunal and proceedings before it, as well as the tribunal's receptivity to U.S. federal-court judicial assistance;
- Whether the discovery request is an attempt to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States; and
- Whether the discovery is unduly intrusive or burdensome.

*Id.* at 264-65.  When evaluating these factors, the Court must be mindful of the goals of Section 1782 – to provide efficient means of assistance to participants in international litigation and to encourage foreign countries by example to provide similar means of assistance to U.S. courts. *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).

Consideration of the four Intel factors also warrants granting Petitioner's § 1782 application.  First, the discovery sought is from entities that are not participating in the foreign proceeding and are not contemplated participants.  Petitioner's Swiss counsel attests that the Subpoenaed Entities are not expected to be parties in the contemplated lawsuit and are likely not subject to the jurisdiction of the Swiss court.  The second factor – nature of the foreign

proceedings and receptivity of the foreign tribunal to federal-court assistance – requires courts to consider "(1) whether United States assistance would offend the foreign country… and (2) whether the material sought is admissible in the foreign tribunal." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006). Petitioner's Swiss counsel attests that the evidence it seeks through the subpoenas are likely admissible in the Zurich Commercial Court and thus this Court's assistance would not offend Switzerland. Third, Petitioner's Swiss counsel states that the application does not circumvent any proof-gathering restriction under Swiss law. The Court agrees that the first through third *Intel* factors favor granting the application based on the representations made in Petitioner's application.

Finally, Petitioner asserts that the discovery is not unduly intrusive or burdensome because it seeks only documentary evidence limited to a narrow time period. As a general proposition, this is true. However, the Court is not in the best position on an ex parte application to determine whether the requests as phrased are overly broad and, in this regard, unduly burdensome. Additionally, insofar as the requests seek documents regarding advice given to other clients of CSAG, the requests can be viewed as intrusive on the privacy rights of non-parties. Accordingly, the Subpoenaed Parties no doubt may wish to enter into a Stipulation of Confidentiality and Protective Order or object to some aspects of the subpoenas as currently formulated. The Court believes these potential objections, however, do not render issuance of the subpoenas improper in light of the other *Intel* factors. Rather, the subpoenas should be issued, and the Subpoenaed Parties should be given an opportunity to object and, if necessary, move to narrow the requests after a meet and confer process with counsel for Petitioner.

**CONCLUSION**

Accordingly, Petitioners are hereby authorized to issue the proposed subpoenas. Respondents shall have 14 days from their receipt of the subpoenas to object or otherwise respond to the requests therein. The parties shall meet in good faith to resolve any objections to the subpoenas. Further, when serving the subpoenas, Petitioners are directed to simultaneously serve a copy of this Order on the recipients/Respondents. Any motions for relief by Respondents that cannot be resolved after meeting and conferring with counsel for Petitioner may be filed with the undersigned without the need for a pre-motion conference.

**SO ORDERED.**

**DATED:** New York, New York
July 31, 2023

_____
KATHARINE H. PARKER
United States Magistrate Judge